IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LINDA K. KENT,

       Plaintiff,

vs.                                         CASE NO. 1:14-cv-113-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits (DIB).  (Doc. 1.)   The Commissioner has answered, (Doc. 9) and both parties have filed briefs outlining their respective positions.  (Docs. 15, 16.)  For the reasons discussed below, it is respectfully recommended that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff applied for a period of disability and DIB in October 2010, alleging disability since November 2008 due to migraines, fibromyalgia, hyperthyroidism, panic attacks, bipolar disorder, high blood pressure, and ADHD.  (R. 35, 37, 39, 148, 193, 213.)   Plaintiff met the insured status for DIB through December 2011.  (R. 19, 141, 144.)  Her claim was denied initially and upon reconsideration.  (R. 76-87.)  A hearing was held before an Administrative Law Judge (ALJ), and the ALJ denied Plaintiff's claim in a decision dated January 17, 2013 (R. 17-27.)  The Appeals Council denied

Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final

decision.  (R. 1-4, 13.)  The instant appeal followed.  (Doc. 1.)  Plaintiff raises one issue

for review: Whether the ALJ erred by failing to give "great weight" to the opinion of

Plaintiff's treating physician that Plaintiff had marked and extreme mental limitations.

(Doc. 15.)

## II.  <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against

the Commissioner's decision.[3] The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision.[4]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11]   Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled.[12]   Fifth, if a claimant's impairments (considering his

residual functional capacity ("RFC"), age, education, and past work) prevent him from

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[14]   The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[15]   The Commissioner may satisfy this burden

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant

has a non-exertional impairment which significantly limits his or her basic work skills or

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]   In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]   Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]   Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

### A.  Plaintiff's Background and Relevant Medical Records

Plaintiff was 52 years old at the time of the hearing decision, had a high school education, and past relevant work as an alarm signal/dispatch operator.  (R. 14, 49, 130, 149.)  She last worked as a dispatch operator in November 2008, and stated she was fired because she could not finish the daily data entry projects and had daily crying

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

spells.  Plaintiff testified that she has migraine headaches four to six times a month with

nausea.  She takes migraine medication that helps but it makes her drowsy.  She

testified that she has problems with paying attention and being unable to finish projects.

She experiences anxiety and panic attacks.  In a typical day, Plaintiff does light chores

like dusting, and her sister helps her with bigger chores such as laundry.  Plaintiff

makes meals such as sandwiches and soup.  She drives short distances and gets help

with grocery shopping.  She does not need help with her personal care.  She only

sleeps about two hours at night, and usually takes two daytime naps.  Plaintiff was

admitted to Shands Vista for a few days in May 2009, and was treated by Dr. Fabrick, a

psychologist, after her discharge.  Dr. Fabrick referred her to Dr. Marchese, a

psychiatrist, and she began treating with Dr. Marchese in April 2010.  She sees him

about once a month for about 30 minutes at a time, and he writes her prescriptions.  (R.

32-48.)

Because Plaintiff's arguments on appeal focus on the disabling effects of her

mental impairments, and in particular an October 2012 mental RFC prepared by Dr.

Marchese, the Court's summary will focus on those records.

In February 2009, Dr. Fabrick saw Plaintiff for depression and fatigue, and

assessed Plaintiff as being in crisis.  In addition to having been recently widowed,

Plaintiff reported being stalked and physically attacked by an ex-husband.  He noted

that her affect improved during the session and that she was helped with Abilify.

Plaintiff's other medications included Cymbalta and Klonipin.  She was seen for several

follow up visits.  By early March 2009, Plaintiff's mood was less depressed, her

judgment was fair, her affect was euthymic, and she denied suicidal/homicidal ideation. (R. 244-53.)

Plaintiff was admitted to Shands Vista on May 4, 2009, under the Baker Act following an overdose of Xanax and alcohol.  She did not have suicidal thoughts during her hospitalization.  She was discharged on May 6.  (R. 237-38.)

Treatment records from Plaintiff's primary care physician at Alliance Family Physicians from December 2008 to September 2012 reflect that she was prescribed medication for depression and anxiety.  Notes from February to July 2009 indicate that she was working part-time.  She experienced increased anxiety in April 2010 after her brother passed away, and she was referred for psychiatric evaluation.  Plaintiff reported that she was diagnosed with ADHD and prescribed Adderall, and was doing "much better" in August 2010.  (R. 290-319.)  A July 2011 psychological examination was normal.  In March 2012, she had appropriate mood and affect.  In September 2012, there were no abnormal psychological findings.  (R. 388-406.)

Dr. Marchese initially assessed Plaintiff with depression.  In May 2010, he noted that Plaintiff had improvement with medication and was calmer and more focused.   Her memory was fair and her mood was euthymic with no evidence of suicidal or homicidal ideation.  From June to November 2010, Plaintiff showed improvement and Dr. Marchese assigned GAF scores from 56 to 66.  Plaintiff reported difficulty sleeping due to her history of shift work, but reported improvement in April 2011.  Dr. Marchese assigned GAF scores of 72 and 76 in June and July of 2011.  Plaintiff reported crying spells and sleep problems in October 2011; her sleep was helped with Trazadone.  In

December 2011, her memory, attention, and concentration remained fair.  Her GAF scores were 54 to 58, but by February 2012 she was assigned a GAF of 66.  Plaintiff experienced a setback in April 2012 when a friend was diagnosed with cancer, but her memory, concentration, and attention remained fair.  Her mood was noted as more stable in October 2012 and her GAF was 60.  (R. 321-33.)

In October 2012, Dr. Marchese completed a Mental Residual Functional Capacity Assessment checklist.  He assessed Plaintiff with "extreme" or "marked" limitations in 17 of 20 functional areas, and with "moderate" limitations in the remaining three.  (R. 334-36.)

The State Agency Psychologist found that Plaintiff is able to perform work at all exertional levels and, although she has moderate limitations in concentration, persistence, or pace and social features, she is capable of sustaining goal-directed activity in a routine setting with minimal social contact.  (R. 54-62., 63-74.)

### B.  ALJ's Decision

The ALJ determined that Plaintiff had the severe impairments of major depressive disorder, generalized anxiety disorder, obesity, and migraines, but did not have an impairment or combination of impairments that met or equaled the Listings.  The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the nonexertional limitations of performing simple, repetitive tasks and performing work where changes in the workplace are infrequent and gradually introduced.  The ALJ found that Plaintiff is able to relate adequately to the general public, coworkers, and supervisors.  The ALJ determined that Dr. Marchese's

RFC checklist assessing marked to extreme limitations was entitled to little weight because it was not consistent with his objective mental status findings and the record as a whole.  The ALJ relied on the testimony of a vocational expert to find that Plaintiff was unable to perform her past relevant work, and that considering Plaintiff's age, education, work experience, and RFC there were jobs that existed in significant numbers that she could have performed through her date last insured (December 31, 2011), such as dining room attendant, night cleaner, and mailroom clerk.  He therefore found that Plaintiff was not disabled.  (R. 19-27.)

## IV.  DISCUSSION

Plaintiff contends that the ALJ erred by failing to give "great weight" to Dr. Marchese's opinion that Plaintiff had marked and extreme limitations in mental functioning.  As support for this contention, Plaintiff primarily relies upon Dr. Marchese's extensive educational and professional credentials.   R. 15 at 17-18.  Plaintiff also argues that "it is not a psychiatric analysis for a layperson to read a psychiatrist['s] notes, which are intended to refresh, not replace, the doctor['s] memory of the patient and state the notes are inconsistent with the expert['s] opinion."  *Id*. at 20.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[21]  If a treating physician's opinion on the nature and severity of a

---

[21] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

Case 1:14-cv-00113-MP-GRJ  Document 17  Filed 08/17/15  Page 10 of 12

*Page 10 of 12*

claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[22]  The ALJ may discount a treating physician's opinion or report regarding an inability to  work if it is unsupported by objective medical evidence or is wholly conclusory.[23]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[24]

In his opinion, the ALJ stated the following with respect to the Mental RFC checklist completed by Dr. Marchese:

> The undersigned gives little weight to this opinion, as it is not consistent with the objective mental status findings, particularly his own findings, which reflect a consistently fair ability in memory, concentration, and attention and no evidence of suicidal or homicidal ideation. Moreover, Dr. Marchese assigned no more than moderate symptoms on GAF scores and at several periods, he assigned GAF scores reflective of no symptoms to only mild symptoms.  His opinion of marked to extreme limitations is not consistent with his objective mental status findings and the record as a whole and is therefore, given little weight.

> In terms of the claimant's mental impairments, the objective findings and the treatment history do not support the degree of limitation the claimant alleges. The record shows the claimant has symptoms of depression and anxiety, particularly with situational stressors, such as the passing of her spouse and brother, an attack by her ex-spouse, and the illness of a friend. While the claimant was Baker Acted in 2009 for an apparent suicide attempt, the

---

[22] 20 C.F.R. § 404.1527(d)(2).

[23] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[24] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

subsequent record fails to show additional or on-going suicidal or homicidal ideation, delusions, or hallucinations. Moreover, her memory, attention, and concentration are consistently fair. Additionally, her treatment regimen has remained conservative with the use of psychotropic medications and she has not required inpatient hospitalization since May 2009. While the claimant has problems with sleep habits due to shift-work, she has improvement in sleep with medication. Overall, the lack of objective mental status findings and the good response to conservative treatment indicates her symptoms are not as limiting as alleged.

(R. 23-24.)

The ALJ afforded "some" weight to the opinion of the State agency psychologist that Plaintiff could perform work at all exertional levels with moderate nonexertional limitations because it was "largely consistent with [Plaintiff's] course of conservative treatment and overall mental function," and "the mental findings of record show [Plaintiff] maintains an adequate ability to relate to others."  (R. 25.)

As the ALJ clearly articulates in his decision, Dr. Marchese's opinion regarding Plaintiff's inability to work lacks support in his own treatment notes, which reflect that Plaintiff's symptoms were managed with medication, that she had consistently fair abilities in memory, concentration, and attention, and that the GAF scores assigned by him do not suggest marked to extreme symptoms.   Dr. Marchese's treatment notes do not reflect any functional assessments that would support his conclusion that Plaintiff suffered from the marked and extreme limitations in mental functioning on the checklist assessment.  In view of the conclusory nature of Dr. Marchese's checklist, the lack of clinical findings that would support such an opinion, Dr. Marchese's treatment notes regarding Plaintiff's functionality, the lack of such limitations noted by Plaintiff's primary care physicians, and the moderate limitations determined by the State agency

psychologist, the Court concludes that the ALJ's decision to afford Dr. Marchese's

Mental RFC checklist little weight is supported by substantial evidence.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 17th day of August 2015.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.